HENRY STAPE, PLAINTIFF IN ERROR, *v.* THE PEOPLE OF THE STATE OF NEW YORK, DEFENDANTS IN ERROR.

*When a party is not obliged to produce a paper in his possession—when an irrelevant statement of a witness cannot be contradicted to discredit his testimony— a jury may convict on the uncorroborated testimony of an accomplice—what questions may be put to a witness to impeach him.*

WRIT OF ERROR to the Court of Sessions of Ontario county, with a bill of exceptions containing all the evidence, to review the trial and conviction of the plaintiff in error of grand larceny.

The plaintiff was indicted in February, 1879, for grand larceny,

committed October 2, 1878, in the town of Gorham, by taking a horse and buggy from one Murray Witter's barn burglariously in the night-time, in company with Frederick Lauer. The latter was discharged upon the trial. The jury having convicted the plaintiff in error, he was sentenced to four years' imprisonment. James L. Bush and his wife Adelaide were the principal witnesses called to establish the crime. Bush, having been charged with the crime, was arrested, and, having pleaded guilty, was committed to await trial. Before this trial came on a justice of the peace, by the name of Doolittle, called upon Bush, and took down a statement of the details of the crime, and took his affidavit thereto and lodged it with the district attorney, who had possession of it when Bush was upon the stand as a witness. The justice was called and testified that he delivered the statement to the district attorney shortly after he took it from Bush. Thereupon the prisoner's counsel asked the district attorney to produce it and the district attorney refused, stating it was made at his request and for his use. At an earlier stage of the trial, Bush was asked in the course of his cross-examination about making the affidavit, and he stated it was made the Sunday after he was lodged in jail, and stated that he could not say what was done with the paper. Thereupon the prisoner's counsel called for the paper, and the district attorney refused to give it up.

At a later stage of the trial, the case states that the prisoner's counsel "again called upon the district attorney for the affidavit made by Bush, which was refused for reasons stated before." The prisoner's counsel claims that it was important that the affidavit should be produced "to impeach the evidence of Bush; and the district attorney had no right to smuggle this paper away to prevent a legitimate use of it."

The court, at General Term said: "We do not find that the district attorney in any manner 'smuggled the paper away.' It was made preparatory for his use, as we must assume from the statements already quoted, and kept by the district attorney after it was placed in his hands by Justice Doolittle. He had apparently the legal and proper custody of the statement and affidavit. Nor do we find any evidence in the case, which would justify us in concluding that the affidavit was 'evidence' which could be properly

used upon the issue involved. There was nothing given to show that the witness Bush had made any different statement of the transactions in the affidavit from his evidence before the court. Until that fact was made to appear we fail to see how the affidavit could have been used, had it been handed over to the prisoner's counsel. We are not to presume that it would contradict the witness, nor that the district attorney had any improper motive in keeping possession of it. Nor do we think he was under any duty to part with its possession upon the demand of the prisoner's counsel; we do not think we have before us an attempt 'to stifle or suppress evidence.' (1 Graham & Waterman on New Trials, 55; *People* v. *Vermilyea*, 7 Cow., 369.) It is not necessary for us to pass upon the question whether the prisoner's counsel might not have obtained an inspection of the affidavit by proper diligence, in advance of the trial, or by calling the district attorney as a witness with a subpœna *duces tecum*. Such diligence was not used. (*People* v. *Vermilya, supra*.) . . .

"Nor can we say that the refusal of the court to allow Gates and H. Harmon to testify to statements made by Bush when in jail, as to his stopping at Harmon's barn to steal his horse, and found him so thin he would not and did not take him. The prisoner, it is true, had asked Bush if he made such a statement, and he said he did not. The fact was not material to any fact involved in the issue; nor was it relevant or material to the evidence given in chief by Bush. Its exclusion is, therefore, justified by the rule we have laid down in *People* v. *Cox*[*] (10 Weekly Digest, 29, op. of SMITH, J.); 1 Wharton Ev., 559; *Carpenter* v. *Ward* (30 N. Y., 243); *Marx* v. *People* (63 Barb., 618); *Ross* v. *Ackerman* (46 N. Y., 210). . . .

"The witness, Walters, was asked—did you desert from the army? This was objected to by the prisoner's counsel, and the objection was overruled and an exception taken. The witness stated, viz.: 'I don't know whether I did or not.' He did not claim his privilege. If he had been convicted of the crime of desertion, he would have been a competent witness, though his conviction

---

* Reported, *Ante*, p. 47.

might have been shown to affect his credibility, and it might have been proven by the record, or by his own oath. (Code of Civ. Pro., § 832.) The party examining him might not have been concluded by his answer. (§ 832.) But the question put to the witness, was as to his guilt or innocence of the crime of desertion. In the absence of a claim of his privilege, we think the question was proper. (*Great Western Tel. Co.* v. *Loomis*, 32 N. Y., 127; *Shepard* v. *Parker*, 36 Id., 517.) This is distinguishable from the case of *People* v. *Crapo* (15 Hun, 269; affirmed, 76 N. Y., 288), as in that case the inquiry was simply as to whether he had been charged with bigamy.

"There was no error committed in the charge to which an exception was taken. (*Brotherton* v. *People*, 75 N. Y., 162.) It was not error for the court to refuse to charge the jury that they could not convict on the uncorroborated evidence of the accomplice. They were cautioned to scan, criticise, scrutinize and weigh cautiously the whole evidence, and if they came to the conclusion that the prisoner, beyond a reasonable doubt, was guilty, they should convict. The charge accorded with the settled rule in this State, that a jury have the right to accept the evidence of an accomplice, and though it be contradicted by the prisoner, find the prisoner guilty. (*Haskins* v. *People*, 16 N. Y., 344; *Frazer* v. *People*, 54 Barb., 306; *People* v. *Haynes*, 55 Id., 450; *People* v. *Dyle*, 21 N. Y., 578; *People* v. *Lawton*, 56 Barb., 126; *Lindsay* v. *People*, 63 N. Y., 143.)"

*E. W. Gardner*, for the plaintiff in error.

*Frank Rice*, District Attorney, for the people.

Opinion by HARDIN, J.; TALCOTT, P. J., and SMITH, J., concurred.

Judgment and conviction affirmed, and proceedings remitted to the Court of Sessions of Ontario county, with directions to enforce the same.